IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| **JONATHAN MILLER** | **PLAINTIFF** |
| **VERSUS** | Civil Action 2:24-CV-97-HSO-BWR |
| **DEPUTY XAVIER THIGPEN,** Individually and in his official capacity, and **JONES COUNTY, MISSISSIPPI** | **DEFENDANTS** |

## COMPLAINT

### [JURY TRIAL DEMANDED]

COMES NOW the Plaintiff, JONATHAN MILLER ("Mr. Miller"), by and through undersigned counsel, and files this Complaint against Jones County Sheriff's Deputy Xavier Thigpen and Jones County, Mississippi, and will show as follows:

### I. PRELIMINARY STATEMENT

This civil rights action seeks monetary damages against Defendants for violations of the Plaintiff's rights guaranteed by the United States Constitution and Mississippi law. The Defendants' wrongful conduct began on September 2, 2023, while Mr. Miller was at his Jones County, Mississippi residence. Before his interaction with the Defendants, Mr. Miller had never been convicted of any criminal act. At all times relevant herein, Mr. Miller was not engaged in any illegal activity. The Defendants are liable for their constitutional violations and resulting damages and harms. The Defendants have a history of systematically depriving citizens of their rights as a matter of policy.

## II. JURISDICTION AND VENUE

1. This action arises under the United States Constitution and federal law, specifically under provisions of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

2. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked under 28 U.S.C. §§ 1331 and 1343.

3. The claims made in this Complaint occurred and arose in the State of Mississippi, this District, and the Hattiesburg Division. Venue, therefore, lies in this Court under 28 U.S.C. § 1391.

4. Under 28 U.S.C. § 1367, this Court also has pendent jurisdiction to hear state law claims.

## III. THE PARTIES

5. Plaintiff JONATHAN MILLER is a natural person and a citizen of the United States and the State of Mississippi.

6. Defendant DEPUTY XAVIER THIGPEN ("Deputy Thigpen") is and was, at all times, relevant to this Complaint, a natural person and a Jones County Sheriff's Department ("JCSD") Deputy. Deputy Thigpen may be served with process at 419 Yates Avenue, Laurel, MS 39440, and he is sued in his individual and official capacity.

7. Defendant, JONES COUNTY, is a governmental entity of the State of Mississippi. Jones County funds and operates the JCSD, the primary law enforcement agency for Jones County. This Defendant may be served through its registered agent, Chancery Clerk Bart Gavin, at 415 N. 5th Avenue, Laurel, MS 39441.

### STATEMENT OF FACTS

#### Mr. Miller's Home

8. Plaintiff Jonathan Miller lives at a home located at 604 Carol Street in Laurel, Mississippi.

9. At approximately 12:10 PM on September 2, 2023, Defendant Deputy Thigpen went to Mr. Miller's home looking for Travis Newell, who is a cousin of Mr. Miller's wife. However, Mr. Newell does not live at Mr. Miller's home and was not present at Mr. Miller's home.

10. While Mr. Miller was asleep in his bed after taking his medication, Deputy Thigpen began to bang on the windows of Mr. Miller's home.

11. Mr. Miller's 11-year-old granddaughter ran into his room to wake him up and told him the police were there.

12. Mr. Miller immediately went to the door and told Deputy Thigpen, "**You could have knocked; you ain't got to beat on my window**" and "**If you break the window, you'll pay for it.**"

13. Deputy Thigpen then got in Mr. Miller's face, repeatedly yelling, "**Is it broke?**".

14. Mr. Miller told Deputy Thigpen that they had not seen Mr. Newell "**for at least a week**".

15. Mr. Newell is clearly not the same person as Mr. Miller, as Mr. Miller is 60 years old, and Mr. Newell is in his mid-to-late twenties.

16. After the discussion that took place in Mr. Miller's driveway, Deputy Thigpen was satisfied that Travis Newell was not present in the home and told Mr. Miller to "**have a good day**".

17. When Mr. Miller turned his back on him, Deputy Thigpen felt disrespected and reinitiated contact with Mr. Miller. Specifically, and for no lawful reason, Deputy Thigpen demanded, "**Let me get your ID.**"

18. Mr. Miller responded by saying, "**You don't need mine.**"

19. Deputy Thigpen then said, "**If you don't give me your ID, then you fixin' to go to jail.**"

20. Deputy Thigpen followed through with his threat by violently seizing Mr. Miller from behind.

21. Deputy Thigpen grabbed and threw Mr. Miller into a parked car in the driveway and slammed Mr. Miller's face into the concrete driveway.

22. Deputy Thigpen then unlawfully handcuffed Mr. Miller and took him to jail.

23. Mr. Miller was unlawfully seized and arrested in front of two of his grandchildren.

24. Deputy Thigpen wrongly charged Mr. Miller with Disorderly Conduct and Failure to Comply with Officer for allegedly refusing "**to provide his name to Deputy because he was on his property.**"

## Jones County Jail

25. Mr. Miller spent over nine (9) hours in a holding cell.

26. Mr. Miller requested a phone call numerous times, but these requests were denied.

27. While he was in the holding cell, Mr. Miller was denied his medication.

28. Mr. Miller's wife came to the jail twice and was unable to see Mr. Miller both times. She was told her husband would have to go before a judge first.

29. For unknown reasons, Mr. Miller was released at around 9 or 10 PM.

## Justice Court Trial

30. As a result of the wrongful charges brought against him, Mr. Miller was forced to hire an attorney to represent him in a Justice Court Trial.

31. Mr. Miller had to invest time and resources in defending himself against these wrongful charges, and Mr. Miller and his family underwent significant emotional distress due to this process.

32. Mr. Miller was erroneously found GUILTY of the wrongful charges and ordered to pay a fine of $500.00, which inflicted further emotional and financial distress.

### Appeal in County Court

33. As a result of the false conviction, Mr. Miller had to spend further time and resources to appeal to the County Court of Jones County.

34. Mr. Miller and his family were subjected to the burdens and stress of a second trial as a result of the wrongful charges brought against him by Deputy Thigpen.

35. On appeal, and after the state presented its case, Mr. Miller was found NOT GUILTY.

### EROSION OF PUBLIC TRUST

36. Law enforcement officers are expected to respect and follow the law no differently than other citizens.

37. When law enforcement officers feel empowered to violate citizens' rights, this can lead to a breakdown of trust in the community and a sense of injustice that can have long-lasting consequences.

38. Expecting law enforcement officers to follow the law themselves is not only reasonable but essential for maintaining a just and orderly society.

39. On information and belief, Deputy Thigpen has a history of misconduct and constitutional violations. JCSD has failed in its obligation to properly supervise, train, and discipline Deputy Thigpen and other deputies. This failure has encouraged and implicitly authorized and sanctioned this type of misconduct. Deputy Thigpen, along with many other Jones County deputies, regularly violate the rights of citizens in clear violation of well-established law.

### IV. DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

40. Defendant's relevant acts were carried out under the color of state law and in his official capacity as an agent of the Jones County Sheriff's Department under Jones County.

41. The acts committed by Deputy Thigpen deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

## COUNT 1
## FOURTH AMENDMENT VIOLATION – UNLAWFUL SEIZURE

42. The Fourth Amendment to the Constitution of the United States guarantees that *"the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ..."*

43. Mr. Miller had committed no offense against the laws of the United States of America, the State of Mississippi, Jones County, Mississippi, or the City of Laurel, Mississippi.

44. Deputy Thigpen had no legal basis for seizing Mr. Miller. Accordingly, Mr. Miller's seizure and detention were unreasonable and unconstitutional.

## COUNT 2
## FOURTH AMENDMENT EXCESSIVE FORCE

45. The Fourth Amendment to the Constitution of the United States guarantees that *"the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ..."*

46. The Fourth Amendment to the Constitution of the United States protects citizens against the use of excessive force during an arrest.

47. Mr. Miller was not committing a crime when he declined to show Deputy Thigpen his ID while on his own property.

48. Mr. Miller committed no criminal act in the presence of Deputy Thigpen.

49. Deputy Thigpen had no reasonable suspicion to believe that Mr. Miller had committed a crime.

50. Mr. Miller did not pose an immediate threat to the safety of Deputy Thigpen.

51. Mr. Miller was not actively resisting arrest or attempting to evade arrest by flight.

52. Nevertheless, without legal authority, Deputy Thigpen forcefully threw Mr. Miller into a car, slammed his face into a concrete driveway, and restrained him.

53. As a result of this excessive use of force, Mr. Miller suffered physical injuries as well as emotional and psychological distress.

54. Under the circumstances, the use of force and or threat to seize and detain Mr. Miller was excessive and violated his Fourth Amendment rights.

## COUNT 3
## MALICIOUS PROSECUTION

55. Using his authority as a Sheriff's Deputy, Deputy Thigpen commenced and assisted in charging Mr. Miller with Disorderly Conduct - Failure to Comply with Officer.

56. Deputy Thigpen did not bring and assist in the prosecution of this case because of a belief that the charge had any factual or legal merit or because probable cause existed. Instead, he prosecuted the case as retaliation against Mr. Miller.

57. Due to Deputy Thigpen's actions, Mr. Miller was booked, processed, placed in criminal proceedings, and initially found GUILTY in Justice Court.

58. Despite Deputy Thigpen's attempt to punish Mr. Miller, the County Court of Jones County found Mr. Miller NOT GUILTY on appeal.

## COUNT 4
## FOURTH AMENDMENT FALSE ARREST

59. Mr. Miller had a right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures, including arrests and detentions for any amount of time.

60. Deputy Thigpen did not have probable cause to arrest Mr. Miller.

61. Accordingly, Deputy Thigpen violated Mr. Miller's Fourth Amendment rights by arresting him.

## COUNT 5
### FOURTH AMENDMENT UNLAWFUL DETENTION

62. The Fourth Amendment to the Constitution of the United States guarantees that *"the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ..."*

63. To have probable cause to charge Mr. Miller with Disorderly Conduct - Failure to Comply with Officer, Mr. Miller must have, with intent to provoke a breach of the peace, failed or refused to promptly comply with or obey a request, command, or order of a law enforcement officer having the authority to then and there arrest any person for a violation of the law.

64. Mr. Miller did not refuse to comply with or obey any lawful request, command or order.

65. Despite lacking probable cause, Deputy Thigpen threw Mr. Miller onto a car, slammed his face into the concrete driveway, placed him in handcuffs, arrested him, and took him to the Jones County jail.

66. These act of detaining Mr. Miller without probable cause or any legal reason by Deputy Thigpen violated Mr. Miller's Fourth Amendment Rights.

## COUNT 6
### MONELL CLAIM

67. On information and belief, the Jones County Sheriff's Department (JCSD) has a custom and culture of violating the constitutional rights of others. Though not a written policy, this custom was so widespread as to have the force of law.

68. Only one of the JCSD deputies on the scene had a body camera on, and it was only turned on after several minutes into the interaction with Mr. Miller.

69. The JCSD has a history of wrongfully tolerating, condoning, and encouraging constitutional violations. As a result, the custom and culture at the JCSD is for the JCSD to protect its deputies when they violate the constitutional rights of others, and where the JCSD only disciplines deputies, if at all, when their actions are exposed by third-party video, making the misconduct impossible to deny or explain away.

70. The JCSD, including Deputy Thigpen, has a history of fabricating material facts against arrestees and victims of excessive force.

71. The JCSD has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its deputies feel empowered to act with impunity.

72. These customs and practices are the moving force behind the violations of the Plaintiff's rights enumerated herein.

73. Plaintiff is aware of many previous occurrences where the JCSD violated the constitutional rights of others. A small sample of some of those occurrences follows:

74. OCCURRENCE 1 – On February 13, 2020, Ms. Hayes, a mother, was falsely arrested by the JCSD while in her home. She was then left in jail from February 13, 2020, to February 15, 2020. She was never allowed to see a judge. The JCSD sent her mugshot to the local newspaper, advising that she had been charged with possession of methamphetamine with the intent to distribute. The local newspaper published her mugshot with the caption that she had been

charged with possession of methamphetamine with the intent to distribute. However, Ms. Hayes was never charged, and no affidavits or arrest warrants were filed or issued.

75. OCCURRENCE 2 – In November 2021, Captain Williams was working out at Xtreme Fitness when he assaulted James Mitchell and falsely arrested and charged Mr. Mitchell with various criminal acts when the video from the gym showed Captain Williams as the aggressor. In doing so, Captain Williams retaliated against James Mitchell for criticizing Captain Williams' unlawful police conduct.

76. OCCURRENCE 3 – In September 2022, Sheriff Berlin entered the football locker room at South Jones High School and unlawfully seized and assaulted a ninth grader. Charges were not pressed against the ninth grader, but he was expelled from school at the behest of the sheriff.

77. OCCURRENCE 4 – In January 2023, Sheriff Berlin committed unlawful seizure and assault on Monterian Dotson. Sheriff Berlin stopped the assault when he realized he was being observed. Sheriff Berlin slammed Mr. Dotson on a woman's truck, and she yelled at him to stop. Charges were not pressed against Mr. Dotson.

78. OCCURRENCE 5 – JCSD Deputies, including but not limited to Captain Vince Williams, Deputy Andrew Yates, Deputy Chase Smith, and Sergeant Jake Driskell, went to the home of Angelia Page and Deshon Bayless. Mr. Bayless was in his parked car behind his house when deputies unlawfully seized, searched, arrested, and imprisoned Mr. Bayless. Deputies also unlawfully seized the home owned by Mr. Bayless's mother, Angelia Page, without a search warrant or probable cause. Deputies proceeded to obtain an illegal search warrant *after* the property was seized and subsequently searched the home. The illegal warrant was obtained, in part, based on false information attributed to Deputy Thigpen. However, there was nothing

illegal to be found in the home because Mr. Bayless and Ms. Page were not engaged in any illegal activity. Several deputies involved subsequently testified falsely against Deshon Bayless, leading to a wrongful conviction in Justice Court, which was dismissed upon appeal by a neutral prosecutor.

79. OCCURRENCE 6 – JCSD Reserve Deputy Charles Ryan Walters shot Corey Donald in the back and kicked him in the head, causing his death. While the investigation was being handled by the Mississippi Bureau of Investigation, Sheriff Berlin gave statements to the media that Corey Donald was shot because he reached for Deputy Walters' gun. However, the video obtained by the Mississippi Bureau of Investigation contradicted Sheriff Berlin's version of events. Sheriff Berlin has never corrected his false statements to the media. Ryan Walters was charged with first degree murder and convicted of second-degree murder after entering a plea deal to the lesser charge.

80. The JCSD has never taken corrective action to fix the culture within the department or correct misstatements to the media.

## V. DAMAGES

81. The Defendants are liable to the Plaintiff, jointly and severally, for all wrongful acts which harmed and caused damage to the Plaintiff.

82. Based on these facts and circumstances, and as a direct result of said acts and omissions, Plaintiff has suffered damage to reputation; past physical pain and suffering; past, present, and future emotional distress; medical bills and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a JURY TRIAL and, that after a jury trial, a judgment be entered against Defendants as follows:

1. Compensatory damages of at least $1,000,000 or such other amount supported by the evidence at trial;

2. Punitive damages of at least $500,000 or other such amount supported by the evidence at trial;

3. Attorney fees and costs of suit under 42 U.S.C. § 1988;

4. Ordinary taxable costs of suit;

5. Prejudgment and post-judgment interest at the legal rate;

6. Any other further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED, this the 1st day of July 2024.

                                        **JONATHAN MILLER, Plaintiff**

                                        MICHAEL V. CORY, JR.
                                        *Attorney for Plaintiff*

OF COUNSEL:

Michael V. Cory, Jr. (MSB# 9868)
Lizbeth J. Velásquez (MSB# 106707)
**DANKS, MILLER & CORY**
213 South Lamar Street (39201)
Post Office Box 1759
Jackson, Mississippi 39215
Phone: 601.957.3101
Facsimile: 601.957.3160
mc@dmclaw.net
ljv@dmclaw.net


Matthew W. Lawrence (MSB #105958)
**Matt Lawrence Law Firm**
mattlawrencelawfirm@gmail.com
525 N. Main Street
Hattiesburg, MS 39401
Phone: (408) 605-8473