IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JONATHAN MILLER**                                                                    **PLAINTIFF**

**v.**                                                        **Civil No. 2:24-cv-97-HSO-BWR**

**DEPUTY XAVIER THIGPEN,** *in his*
*individual and official capacities; and*
**JONES COUNTY, MISSISSIPPI**                                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT JONES COUNTY, MISSISSIPPI'S MOTION [27]
FOR JUDGMENT ON THE PLEADINGS**

Defendant Jones County, Mississippi's Motion [27] for Judgment on the Pleadings seeks dismissal of all claims against it on grounds that Plaintiff Jonathan Miller has not adequately alleged a custom or policy of deliberate indifference to constitutional rights. The Court finds that the Motion [27] should be granted and that all claims against Defendant Jones County, Mississippi, should be dismissed with prejudice.

I. BACKGROUND

A.  Factual Background

On September 2, 2023, Defendant Deputy Xavier Thigpen ("Deputy Thigpen") of the Jones County Sheriff's Department ("JCSD") arrived at Plaintiff Jonathan Miller's ("Plaintiff" or "Mr. Miller") home in search of Travis Newell ("Newell"), the cousin of Plaintiff's wife. Compl. [1] at 3. The Complaint [1] states that Plaintiff informed Deputy Thigpen that he had not seen Newell for at least a week and that,

after further discussion in the driveway, Deputy Thigpen told Plaintiff to "have a good day[.]" *Id.* Plaintiff turned his back to Deputy Thigpen, who allegedly "felt disrespected and reinitiated contact with Mr. Miller[,]" *id.*, demanding that Plaintiff present some form of identification, *id.* Plaintiff responded by saying "[y]ou don't need mine[,]" upon which Deputy Thigpen said "[i]f you don't give me your ID, then you fixin' to go to jail." *Id.* at 3-4.

According to the Complaint [1], Deputy Thigpen "followed through with his threat by violently seizing Mr. Miller from behind[,] . . . thr[owing] Mr. Miller into a parked car in the driveway[,] and slamm[ing] Mr. Miller's face into the concrete driveway." *Id.* at 4. Deputy Thigpen then "unlawfully handcuffed" Mr. Miller, took him to jail, and "wrongfully charged Mr. Miller with Disorderly Conduct and Failure to Comply with Officer for allegedly refusing 'to provide his name to Deputy because he was on his property.'" *Id.* Plaintiff purportedly spent nine hours in a holding cell. *Id.* He obtained counsel to represent him in Justice Court proceedings, where he was found guilty on the disorderly conduct charge and ordered to pay a fine of $500.00. *Id.* at 4-5. Plaintiff appealed the judgment to the County Court of Jones County, where he was found not guilty. *Id.* at 5.

Relevant here, the Complaint [1] alleges that

> Deputy Thigpen has a history of misconduct and constitutional violations. JCSD has failed in its obligation to properly supervise, train, and discipline Deputy Thigpen and other deputies. This failure has encouraged and implicitly authorized and sanctioned this type of misconduct. Deputy Thigpen, along with many other Jones County deputies, regularly violate [sic] the rights of citizens in clear violation of well-established law.

2

*Id.* at 5.  The Complaint [1] advances five claims against Deputy Thigpen, for unlawful seizure (Count 1), excessive force (Count 2), malicious prosecution (Count 3), false arrest (Count 4), and unlawful detention (Count 5).  *Id.* at 6-8.  At issue here is the sixth claim, a claim against Defendant Jones County, Mississippi ("Jones County"), under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (Count 6).  *Id.* at 9-11.  Specifically, the Complaint [1] asserts that Jones County "has a history of wrongfully tolerating, condoning, and encouraging constitutional violations" and that "the custom and culture at the JCSD is for the JCSD to protect its deputies when they violate the constitutional rights of others . . . ."  *Id.* at 9.  To establish the existence of a custom, Plaintiff points to six prior instances of alleged constitutional violations committed by JCSD deputies.  *Id.* at 9-11.

B.  Procedural History

Plaintiff filed suit on July 7, 2024, *see id.*, and Defendants Jones County and Deputy Thigpen have answered, *see* Ans. [6], meaning that the pleadings are closed.  Defendant Jones County has now filed a Motion [27] for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), seeking dismissal of the lone claim against it, the *Monell* claim in Count 6.  *See* Mot. [27].  Plaintiff has responded, *see* Resp. [36], and Jones County has filed its Reply [38], *see* Reply [38].[1]

---

[1] Jones County's Reply [38] was filed on March 17, 2025, which was more than seven days after Plaintiff filed his Response [36] on March 5, 2025.  *See* Resp. [36]; Reply [38].  The Reply [38] was untimely, but because Plaintiff has not filed a motion to strike or otherwise raised the issue he has waived it.

3

Jones County argues that the Complaint [1] does not identify a policymaker, nor does it allege a sufficient number of prior incidents comparable to the alleged constitutional violations committed by Deputy Thigpen in this case. Mem. [28] at 5-20. Specifically, it contends that six incidents is too small a sample size to "demonstrate a [p]ervasive [p]attern of [c]onstitutional [v]iolations" with the effect of official policy, and that even if they were sufficiently numerous, the occurrences are factually distinct from this case. *Id.* at 13-20. Jones County further contends that Plaintiff has not pled sufficient facts to demonstrate that any policy or custom was the moving force behind the constitutional violations alleged here. *Id.* at 20-22.

Pointing to the six prior instances of misconduct referenced in the Complaint [1], Plaintiff responds that he has alleged sufficient facts demonstrating that a custom of constitutional violations "within JCSD is extensive, ongoing, and well-documented." Resp. [36] at 2-11. He maintains that JCSD deputies have "repeatedly fabricated charges and retaliated against citizens" and that "Deputy Thigpen himself has a documented history of misconduct." *Id.* at 10. Plaintiff also argues that a failure to "properly supervise, train, and discipline Deputy Thigpen" has "implicitly authorized" the misconduct at issue in this case, *id.*, and he posits that the alleged failure to train JCSD deputies reflects a deliberate indifference to the likelihood of continued unconstitutional abuses, *id.* at 10-11.

Jones County counters in its Reply [38] that the Complaint [1] does not state with specificity that any failure to properly train caused the alleged violations of Plaintiff's rights, Reply [38] at 3, and allegations that the failure to train amounted

4

to deliberate indifference are based upon a conclusory assertion, and not specific factual averments, *id.* at 4.  Finally, Jones County points out that Plaintiff merely repeats verbatim the Complaint's [1] allegations as to the six prior occurrences and does not explain or otherwise establish how these incidents are comparable to the facts of this case.  *Id.* at 6-8.

## II.  DISCUSSION

### A.     Relevant Legal Authority

#### 1.     Federal Rule of Civil Procedure 12(c)

A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).  "In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the contents of the pleadings, including attachments thereto."  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (quotations and citations omitted).

To decide a Rule 12(c) motion, a court applies the same standard as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)).  A claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 555 (2007).  While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014), a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

2.    *Monell* Liability under 42 U.S.C. § 1983

Municipalities or other local government entities such as Jones County may be liable under 42 U.S.C. § 1983 "where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Monell*, 436 U.S. at 690).  "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 694).  To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).  These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that

can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Official policy may also "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F. 3d at 579). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). "Regardless of its form, the policymaker must have actual or constructive knowledge of the official policy or custom." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (citations omitted).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* For a plaintiff to succeed on a theory of failure to supervise, train, or discipline, he "must plead that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to

7

deliberate indifference." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (discussing what a plaintiff must plead to state a claim that a municipality "failed to adequately train, supervise, and discipline its officers").

"Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)). "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Jackson v. Valdez*, 852 F. App'x 129, 136 (5th Cir. 2021) (quotations omitted); *see also Seigfried v. Bodin*, No. Civ. 1:03-cv-866-LG-JMR, 2006 WL 2972598, at *4 (S.D. Miss. Sept. 25, 2006) ("Deliberate indifference is the subjective intent to cause harm, and it cannot be inferred from an official's failure to act reasonably."). Instead, a plaintiff "must show that 'in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonabl[y] be said to have been deliberately indifferent to the need.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

B.   Analysis

The Complaint [1] alleges that "the Jones County Sheriff's Department (JCSD) has a custom and culture of violating the constitutional rights of others.

8

Though not a written policy, this custom was so widespread as to have the force of law." Compl. [1] at 9. Plaintiff has not alleged that any formal policy adopted by Jones County was the moving force behind the constitutional violations at issue in this case. *See generally id.* Thus, Plaintiff travels under the theory of widespread custom and practice and points to six prior occurrences to support his claim that JCSD "has acted with deliberate indifference to a pattern of past occurrences of constitutional violations" and has failed to "properly supervise, train, and discipline Deputy Thigpen and other deputies." Compl. [1] at 5, 9.

1.  <u>Pattern and practice of violating constitutional rights</u>

There is no set number of prior incidents needed to establish a pattern. *See Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) ("The number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies. . . ." (omission in original) (quoting *Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015))). Although the Fifth Circuit has acknowledged that it has "no rigid rule regarding numerosity to prove a widespread pattern of unconstitutional acts[,]" it has held that it could not conclude that six similar incidents in the span of five years was anything more than a series of isolated violations, and was thus insufficient to "support the reasonable inference" that there existed a policy or practice of violating individual rights that is "so persistent and widespread as to practically have the force of law." *Jackson*, 852 F. App'x at 135-36 (quotations omitted); *see also Benfer v. City of Baytown, Texas*, 120 F.4th 1272, 1286 (5th Cir.

9

2024) (holding that five instances of alleged violations over four years was insufficient in a jurisdiction of 83,701 people); *York v. Welch*, No. 20-40580, 2024 WL 775179, at *4-5 (5th Cir. Feb. 26, 2024) (ruling that thirty complaints of excessive force over a ten-year period was insufficient to allege a custom); *Hayes v. Berthelot*, No. CV 24-1434, 2025 WL 317662, at *4-5 (E.D. La. Jan. 28, 2025) (finding that the six incidents alleged in the complaint did not make out a pattern because they were "neither similar as to constitute anything other than isolated acts, nor common, persistent, or widespread as to constitute a pattern of conduct").

Prior incidents must also be "fairly similar to what ultimately transpired" in this case. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). According to the Fifth Circuit, "[w]hile the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party." *Id.* Thus, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Id.* The Complaint [1] seeks to hold Jones County liable for a general "deliberate indifference to a pattern of past occurrences of constitutional violations of citizens . . . ." Compl. [1] at 9. To support this claim, Plaintiff must provide factual allegations establishing that, if true, these other instances of alleged misconduct were sufficiently comparable to those in this case. *See City of N. Richland Hills*, 406 F.3d at 383.

Plaintiff alleges that Deputy Thigpen violated his rights by subjecting him to unlawful seizure, excessive force, malicious prosecution, false arrest, and unlawful detention.  Compl. [1] at 2-8.  But an examination of the six alleged occurrences of prior misconduct committed by JCSD reveals that not all are sufficiently comparable to support a *Monell* claim.  *See id.* at 9-11.

"Occurrence 1" took place on February 13, 2020.  *Id.* at 9-10 (capitalization omitted).  There, JCSD deputies allegedly falsely arrested a mother in her home and left her in jail for two days, then sent her mugshot to a local newspaper and advised that she had been charged with possession of methamphetamine with intent to distribute.  *Id.*  The newspaper published this information, but the mother was never charged, and "no affidavits or arrest warrants were filed or issued."  *Id.*  There is no allegation that JCSD deputies used excessive force, nor does the Complaint [1] claim that she was maliciously prosecuted.  *See id.*  This incident is too dissimilar to the violations Plaintiff allegedly suffered here to be considered comparable.

In "Occurrence 2[,]" the Complaint [1] asserts that, in November 2021, a JCSD Captain retaliated against another individual for criticizing his "unlawful police conduct" by assaulting, falsely arresting, and charging the individual for "various criminal acts[.]"  *Id.* at 10 (capitalization omitted).  This is the only allegation of prior misconduct that involved a JCSD deputy retaliating in response to perceived disrespect.  *See id.* at 9-11.  One the whole, at the pleadings stage,

11

"Occurrence 2" is arguably sufficiently similar to the violations committed by Deputy Thigpen to be considered.

The Complaint [1] states that in "Occurrence 3[,]" in September 2022, Sheriff Joe Berlin "entered the football locker room at South Jones High School and unlawfully seized and assaulted a ninth grader[,]" but no charges were filed. *Id.* (capitalization omitted). Then, in January 2023, Sheriff Berlin purportedly committed "Occurrence 4" when he unlawfully seized and assaulted an individual, but "stopped the assault when he realized he was being observed" and did not charge the individual with any crime. *Id.* Taken in a light most favorable to Plaintiff, these allegations are sufficient to allege excessive force, but they did not involve false arrest or malicious prosecution. *Id.* Nevertheless, for purposes of the pending Motion [27], the Court will treat them as sufficiently similar to the alleged violations here. *See id.*

Plaintiff does not state when "Occurrence 5" and "Occurrence 6" took place, *id.* at 10-11 (capitalization omitted), but "Occurrence 5" involved JCSD deputies' visit to the residence of a mother and son, *id.* at 10 (capitalization omitted). The son, who was sitting in a car parked behind the home, was "unlawfully seized, searched, arrested, and imprisoned[.]" *Id.* The deputies also "unlawfully seized the home owned by [the mother] without a search warrant or probable cause" and then "proceeded to obtain an illegal search warrant . . . and subsequently searched the home." *Id.* (emphasis in original omitted). The Complaint [1] claims that "[t]he illegal warrant was obtained, in part, based on false information attributed to

Deputy Thigpen. However, there was nothing illegal to be found in the home." *Id.* at 10-11. Plaintiff asserts that the deputies "testified falsely" against the son, "leading to a wrongful conviction in Justice Court, which was dismissed upon appeal by a neutral prosecutor." *Id.* at 11. While this incident did not involve excessive force, it did involve alleged malicious prosecution, unlawful detention, false arrest, and wrongful imprisonment. *Id.* The Court will assume at the pleadings stage that this is sufficiently similar to the violations claimed in this case.

"Occurrence 6" involved a situation where a JCSD reserve deputy shot a man in the back and kicked him in the head, leading to the man's death. *Id.* Sheriff Berlin gave statements that the reserve deputy shot the man because he reached for the deputy's gun, but the Complaint [1] contends that video obtained by the Mississippi Bureau of Investigation contradicted this version of events, and that "Sheriff Berlin never corrected his false statement to the media." *Id.* The reserve deputy was charged with "first[-]degree murder and convicted of second-degree murder after entering a plea deal to the lesser charge." *Id.* Simply put, the only similarity between "Occurrence 6" and the facts alleged here is that excessive force was used, however, the scale, circumstances, and manner of that force were vastly different from that alleged here.

At best, then, only four of the prior incidents of alleged misconduct, Occurrences 2, 3, 4, and 5, which took place over a span of three years, could arguably be viewed as sufficiently comparable to the facts here. This is inadequate to establish a widespread pattern or practice rising to the level of a custom of Jones

13

County.[2] *See Sanders-Burns*, 594 F.3d at 381 (holding that "[n]otice of a pattern of similar violations is required[,]" which are "fairly similar to what ultimately transpired" (quotations omitted)); *see also Saenz*, 637 F. App'x at 832 (quoting *Sanders-Burns* at the Rule 12(b)(6) stage).

Because the Complaint [1] does not adequately allege a widespread practice of violating individuals' constitutional rights sufficient to establish an official policy of Jones County, Plaintiff's claim of a pattern and practice of violating individuals' constitutional rights cannot survive. *See Harris, next friend of Doe v. Parker*, 512 F. Supp. 3d 714, 726 (S.D. Miss. 2021) ("For a practice or custom to be considered an official policy of [a municipality], a pattern of unconstitutional conduct must be shown." (citing *Zarnow*, 614 F.3d at 169)).

2.  <u>Failure to supervise, train, and discipline</u>

Plaintiff alleges that Jones County failed to properly supervise, train and discipline Deputy Thigpen. Compl. [1] at 5. To support this claim, he "must allege facts to plausibly suggest the municipality's deliberate indifference to the need for proper training." *Saenz*, 637 F. App'x at 832. "Because the 'standard for

---

[2] The Fifth Circuit has also held that absent contextual factors such as the size of the department or number of arrests, "it is *impossible* to identify the existence of a pattern[.]" *Verastique v. City of Dallas, Texas*, 106 F.4th 427, 432 (5th Cir. 2024). Because Plaintiff has not provided context as to how disproportionate six alleged constitutional violations may be for a jurisdiction the size of Jones County, he has not sufficiently pled facts that would suggest these occurrences are anything more than isolated incidents. *See Saenz*, 637 F. Supp. at 832 ("Without further context surrounding the circumstances, the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent."); *Peterson*, 588 F.3d at 851 n.4 ("Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy."); *see also York*, 2024 WL 775179, at *4-5 (affirming the grant of a motion for judgment on the pleadings by applying *Peterson* and stating that "[t]he fact that the court decided *Peterson* at the summary judgment stage does not change our conclusion.").

[municipal] fault' is a 'stringent' one, '[a] pattern of similar constitutional violations by untrained employees is ordinarily' required to show deliberate indifference." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (alterations in original) (quoting *Connick*, 563 U.S. at 62). This also holds true for a failure to discipline claim, where "to survive dismissal, [P]laintiff[] must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Verastique v. City of Dallas, Texas*, 106 F.4th 427, 432 (5th Cir. 2024). Thus, when the Fifth Circuit analyzes a *Monell* claim for failure to train, supervise, or discipline, it applies essentially the same standard that is applied for evaluating whether a widespread custom or practice existed. *See, e.g., id.* at 432-44; *Armstrong*, 60 F.4th at 276-77; *Saenz*, 637 F. App'x at 831-32.

      As the Court has already determined, Plaintiff has not alleged sufficient facts to support a widespread pattern of similar violations, let alone to support his claim that Jones County had notice of such a pattern or of the need for training. And Fifth Circuit precedent holds that a general conclusion that "police officers received subpar training across the board . . . is not enough to imply or state that policymakers acted with deliberate indifference." *Id.* Only four of the alleged occurrences, which took place over three years, could be considered comparable, and only one of those involved Deputy Thigpen. *See* Compl. [1] at 9-11. The Complaint [1] also lacks other factors the Fifth Circuit has identified as potentially relevant in analyzing a failure to train or discipline claim, such as department size and number of arrests, which "provide the context necessary to evaluate whether an alleged

15

department-wide pattern is so obvious as to impart constructive notice." *Verastique*, 106 F.4th at 434. "Absent those contextual factors, it is *impossible* to identify the existence of a pattern—much less one that imparts constructive notice."[3] *Id.* (emphasis in original). For the reasons the Court has stated previously, Plaintiff has not asserted sufficient facts to "point to a particular failure to train that could render a constitutional violation highly predictable." *Armstrong*, 60 F.4th at 277 (quotations omitted).

For these reasons, Plaintiff's "*Monell* claim based on failure to train, supervise, and discipline fails for lack of factual allegations that support a finding of deliberate indifference."[4] *Armstong*, 60 F.4th at 277. Jones County's Motion [27] for Judgment on the Pleadings should be granted.

---

[3] Plaintiff has not argued that he needs discovery to support a widespread pattern of similar constitutional violations, nor has he sought leave to amend his pleadings to include additional incidents. *See generally* Mem. [27]. In cases where no discovery has occurred, the Fifth Circuit has acknowledged such and still affirmed dismissal for a failure to sufficiently allege a widespread pattern or practice. *See Verastique*, 106 F.4th at 434 (holding that because the complaint "lack[s] any context or frame of reference, it trades rational analysis for a random shot in the dark" such that "though [plaintiffs] purport to discover a pervasive pattern of failure to discipline, in reality they have alleged nothing at all"); *Jackson*, 852 F. App'x at 135-36 (recognizing that the plaintiff "is without the benefit of discovery" and finding that the complaint should be dismissed anyway for only alleging "isolated violations").

[4] Even if the Complaint [1] adequately alleged Jones County was deliberately indifferent to a persistent pattern of constitutional violations, it lacks any factual detail as to how Jones County's training program is deficient. *See Benfer*, 120 F.4th at 1287 ("In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." (quotations omitted)). The Complaint [1] offers only conclusory assertions that "JCSD has failed in its obligation to properly supervise, train, and discipline Deputy Thigpen and other deputies." Compl. [1] at 5. Simply put, Plaintiff has "made no attempt to identify a specific training program, point out particular deficiencies in that program, or explain why any lack of a formalized training program was constitutionally problematic." *Benfer*, 120 F.4th at 1287.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Jones County, Mississippi's Motion [27] for Judgment on the Pleadings is **GRANTED**, and all claims against it are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 21st day of May, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE